Willie C. HENDKING, et al.,
Plaintiffs-Appellants,

v.

Fred V. SMITH, et al.
Defendants-Appellees.

No. 84–7654.

United States Court of Appeals,
Eleventh Circuit.

Feb. 3, 1986.

---

R. Boyd Miller, Nicholas Nagrich, Mobile, Ala., for plaintiffs-appellants.

Harry A. Lyles, Dept. of Correction, Bobby N. Bright, Montgomery, Ala., for defendants-appellees.

Before TJOFLAT and KRAVITCH, Circuit Judges, and DUMBAULD *, Senior District Judge.

DUMBAULD, Senior District Judge.

Appellant's class action challenges on equal protection grounds[1] an Alabama prison rule which excludes from certain privileges inmates with a history of violent sex offenses. We affirm the judgment below in favor of appellees.

Alabama classifies convicts into five groups with respect to the threat to security which they present: maximum, close, medium, minimum, and community. A minimum security prisoner has an opportunity to enjoy certain privileges, and can be assigned to "honor farms" or leave the facility altogether on short-term passes. According to the testimony of two inmates, the fact of attaining minimum security status and the length of time such status is maintained has a favorable impact on consideration for parole.

On August 9, 1979, the Department of Corrections adopted a rule that no person with a history of a sex offense would be eligible for honor farm placement. In March, 1980 it was further ordained that inmates with a history of violent sex offense could not be accorded minimum security status. In a memorandum of August 19, 1981, Commissioner Joe S. Hopper defined the sex offender class as containing only persons convicted of the offense or committing the violent sex act during the commission of another crime:

The commission of a violent sex offense precludes an inmate from being placed in minimum or community custody. For clarification, this means the inmate was convicted of the offense or the violent sex act was committed during the commission of another crime. This does not mean that mentioning of the offense, which was eventually nolprossed or did not actually occur, has any bearing on these custodies.

The standard of equal protection analysis is well described by Judge Frank M. Johnson, Jr. in *Zeigler v. Jackson*, 638 F.2d 776, 779 (5th Cir. Unit B, 1981):

We agree with the district court that the equal protection clause does not require that all persons be treated identically. However, if distinctions between similarly situated individuals are to withstand an equal protection analysis, such distinctions must be reasonable, not arbitrary, and must rest on grounds having a fair and substantial relation to the object of the legislation. See *Stanton v. Stanton*, 421 U.S. 7, 14 [95 S.Ct. 1373, 1377, 43 L.Ed.2d 688] (1975).

Appellant argues that sex offenders are no different from other criminals and should be entitled to the same opportunities and privileges during incarceration.

However, it seems clear as a matter of general knowledge that it would not be appropriate to allow sex offenders the op-

---

* Honorable Edward Dumbauld, Senior U.S. District Judge of the Western District of Pennsylvania, sitting by designation.

1. "... nor shall any State deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." 14th Amdt. sec. 1.

portunity to leave the prison on passes permitting them to mingle with the general public in the community, or to be housed in low-security facilities from which escape is easier.

Appellant stresses the lack of solid empirical data or studies, and asks why murderers should receive privileges denied to sex offenders.

Here, too, it is a matter of general knowledge that, except for professional killers, few people commit more than one murder in a lifetime. It is a crime involving a specific interpersonal crisis, and not a habitual offense. On the other hand, sex offenders are subject to a continually recurring physiological urge which is part of their nature and requires the imposition of effective restraints in order to curb the habitual repetition of episodes producing the harmful consequences to the public resulting from the propensities of their nature.

The classification adopted by the Alabama prison system is not arbitrary and capricious, but reasonable and appropriate. There is no constitutional invalidity unless the regulation is administered maliciously or in bad faith. No such shortcoming has been demonstrated in the case at bar.

The judgment of the District Court is AFFIRMED.