JOHNSON, Circuit Judge:
 

 Plaintiff Carl J. Monroe appeals the district court’s judgment in favor of the defendants on Monroe’s claim to have erroneous prejudicial information expunged from his prison files.
 

 I. STATEMENT OF THE CASE
 

 A.
 
 Background Facts
 

 In 1970, Monroe pled guilty to the first-degree murder of Linda Ann Harden.
 
 Monroe v. State,
 
 50 Ala.App. 302, 278 So.2d 751 (1973). Although Monroe was initially sentenced to death, the Alabama Court of Criminal Appeals amended Monroe’s sentence to life imprisonment in the wake of the Supreme Court’s decision in
 
 Furman v. Georgia,
 
 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).
 

 Among the records contained in Monroe’s prison file is a post-mortem examination of Linda Harden by a toxicologist (“the toxicologist’s report”) which states that “examination of sexual organs indicate sexual molestation in some manner.” In addition, Monroe’s file contains a Presentence Investigation Report (“PSI”) which states that investigations by the coroner and the toxicologist revealed that Linda Harden had been raped. The PSI also states that the author of the PSI, Joe Jackson, had actually interviewed Monroe and that Monroe had admitted almost everything contained in the PSI, thereby creating the
 
 *1435
 
 strong impression to any reader that Monroe had admitted raping Linda Harden.
 

 In March of 1981, the Social Services Division of the Alabama Department of Corrections (“the DOC”) recommended that Monroe be assigned to a minimum camp as a prelude to being granted a work-release assignment.
 
 [1]
 
 This recommendation was denied on the ground that Monroe’s PSI indicated that his victim had been raped. Monroe was informed by his attorney that he was denied work-release because a sex offense appeared in his prison file. Monroe then wrote to officials in the DOC seeking the removal or waiver of his sex offender status on the grounds that he had neither been charged with nor convicted of any sex offense.
 
 [2]
 
 Assistant Director John Nagle informed Monroe that he was ineligible for work release because the “victim in your offense was raped.”
 

 In 1984, due to Monroe’s numerous violations of prison rules, prison authorities upgraded Monroe’s custody classification from minimum to medium.
 
 [3]
 
 When Monroe subsequently sought reclassification to minimum status, prison authorities informed him that he was no longer eligible to be restored to minimum custody status because he was classified as a sex offender. In a memo explaining the custody regulations, a prison official told Monroe that he was no longer eligible for minimum classification because his “murder conviction involved rape.”
 
 [4]
 

 In December of 1986, Monroe wrote to Ealon Lembert, Chairman of the Alabama Board of Pardons and Paroles (“the Board”), requesting the correction of several errors in his PSI. In his letter, Monroe argued that there was no direct evidence that he had raped Linda Harden and that the toxicologist’s report was consistent with a finding that Linda Harden had actually had consensual sexual relations with someone other than Monroe before she was murdered. Monroe also denied speaking with Joe Jackson and admitting the facts reported in the PSI.
 
 [5]
 
 In a letter dated December 12, 1986, A1 Smith, the General Counsel to the Board, responded by characterizing the issues raised by Monroe as “absurd” and stating that he found no merit to any of them. In a subsequent letter, dated December 16, 1986, Smith conceded, however, that Joe Jackson had never interviewed Monroe and that the PSI was based on information allegedly provided to Jackson by parole officer Kenneth Law. Nevertheless, the Board continued to refuse to correct the statements in the PSI which suggested that Monroe had admitted raping Linda Harden.
 

 B.
 
 Procedural History
 

 In March of 1987, Monroe filed a
 
 pro se
 
 complaint pursuant to 42 U.S.C. § 1983
 
 *1436
 
 alleging that he was being deprived of due process because erroneous information in his prison file was being used to deny him fair consideration for parole and minimum custody status. Monroe sought equitable relief only, requesting an order expunging the allegedly false and misleading information from his prison file. The defendants filed an answer coupled with a motion for summary judgment.
 
 [6]
 
 The defendants argued that Monroe failed to state a claim upon which relief could be granted because he was not constitutionally entitled to parole or a particular custody classification.
 

 Despite the defendants’ failure to respond to Monroe’s request for discovery, to reply to Monroe’s motion for summary judgment, and to file a pretrial statement, neither the magistrate judge nor the district court imposed sanctions.
 
 [7]
 
 On July 31, 1989, the magistrate judge held an eviden-tiary hearing. In his recommendation, the magistrate judge determined that the PSI contained erroneous information. The magistrate judge concluded, nevertheless, that the decision to deny parole was based on a number of legitimate factors in addition to the admittedly false information contained in the PSI. Specifically, the magistrate judge found that the toxicologist’s report which stated that evidence indicated sexual molestation of Linda Harden was sufficient to support the classification of Monroe as a sex offender. In addition, the magistrate judge held that the brutal nature of the murder and Monroe’s disciplinary history were sufficient to deny parole. The magistrate judge therefore recommended judgment in favor of the defendants. The district court’s order adopted the recommendation without opinion.
 

 II. ANALYSIS
 

 We review the magistrate judge’s findings of facts, which were accepted and adopted by the district court without objection by either party, under the plain error standard.
 
 LoConte v. Dugger,
 
 847 F.2d 745, 749-50 (11th Cir.),
 
 cert. denied,
 
 488 U.S. 958, 109 S.Ct. 397, 102 L.Ed.2d 386 (1988). Questions of law, however, remain subject to
 
 de novo
 
 review.
 
 Id.
 

 Monroe argues that, although he has no liberty interest in parole, he has a due process right to be fairly considered for parole. He contends that the defendants’ reliance on admittedly false information in order to deny him parole or a minimum security classification violates due process. Monroe claims that he therefore has a due process right to have the false and erroneous information deleted from his PSI.
 
 Id.
 

 [8]
 

 
 *1437
 
 In
 
 Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,
 
 442 U.S. 1, 7, 99 S.Ct. 2100, 2103-04, 60 L.Ed.2d 668 (1979), the Supreme Court held that the Constitution does not confer a liberty interest in parole. The Court also determined, however, that states may confer such a liberty interest in parole under state law.
 
 Id.
 
 at 12, 99 S.Ct. at 2106. When a state statute, practice, or regulation provides for an expectancy of parole and limits official discretion to deny parole, then a liberty interest in parole is created.
 
 Id.
 
 Applying
 
 Greenholtz,
 
 we have previously determined that the Alabama parole statute, Ala.Code § 15-22-26 (1975), does not confer a liberty interest in parole that is protected by the Due Process Clause because the statute provides that parole may be granted at the Board’s discretion.
 
 Thomas v. Sellers,
 
 691 F.2d 487, 488-89 (11th Cir.1982) (per curiam).
 
 [9]
 
 Accordingly, we noted that federal courts should not interfere with the discretionary decisions of the Board “absent flagrant or unauthorized action” by the Board.
 
 Id.
 
 at 489. We have also held that the classification scheme adopted by the Alabama prison system to determine the custody status of prisoners “is not arbitrary and capricious, but reasonable and appropriate.”
 
 Hendking v. Smith,
 
 781 F.2d 850, 852 (11th Cir.1986) (holding that regulation denying sex offenders minimum security status does not violate the Equal Protection Clause). In addition, we have stated that the classification system used by the Alabama prison system contains no inherent constitutional invalidity, but becomes constitutionally offensive only if “the regulation is administered maliciously or in bad faith.”
 
 Id.; see also Francis v. Fox,
 
 838 F.2d 1147, 1149-50 (11th Cir.1988) (holding that Alabama statute governing the prisoner work-release program does not confer a liberty interest because it is discretionary).
 

 The defendants have admitted to this Court, as they did to the magistrate judge, that the statements that Monroe seeks to have removed from his file are false. They concede that Monroe’s PSI erroneously states that the toxicologist’s and the coroner’s reports revealed that Linda Harden had been raped, that Joe Jackson had interviewed Monroe before preparing the PSI and that Monroe admitted “almost everything” reported in the PSI. The defendants also concede, and the record shows, that state officials specifically relied upon the statement in the PSI that Linda Harden had been raped in deciding to classify Monroe as a sex offender and in denying him parole. Nevertheless, citing our decision in
 
 Slocum v. Georgia State Bd. of Pardons and Paroles,
 
 678 F.2d 940, 942 (11th Cir.),
 
 cert. denied,
 
 459 U.S. 1043, 103 S.Ct. 462, 74 L.Ed.2d 612 (1982), the defendants argue that because there is no liberty interest in parole release or in a particular security classification Monroe has no right to due process in the procedures relating to parole release. Stated simply, the defendants argue that so long as the Alabama parole statute confers no liberty interest in
 
 *1438
 
 parole they may rely on admittedly false information in denying parole without offending the Due Process Clause.
 

 We cannot agree with the defendants’ argument. It is true that the Alabama parole statute is framed in discretionary terms and therefore does not confer a liberty interest in parole. Ala.Code § 15-22-26 (1975);
 
 Thomas,
 
 691 F.2d at 489. Nevertheless, this discretion is not unlimited. A parole board may not engage in “flagrant or unauthorized action.”
 
 Thomas,
 
 691 F.2d at 489.
 
 [10]
 
 Section 15-22-26 cannot be read as granting the Board the discretion to rely upon false information in determining whether to grant parole. Therefore, by relying on the false information in Monroe’s file, the Board has exceeded its authority under section 15-22-26 and treated Monroe arbitrarily and capriciously in violation of due process.
 
 Thomas,
 
 691 F.2d at 489.
 

 Our holding today does not conflict with our earlier holding in
 
 Slocum, supra.
 
 In
 
 Slocum,
 
 the plaintiff, who had been denied parole, made the conclusory allegation that the Board must have relied upon erroneous information because otherwise the Board would surely have granted him parole.
 
 Slocum,
 
 678 F.2d at 941. The plaintiff then sought to assert a due process right to examine his prison file for the alleged errors. Unlike the instant case, in
 
 Slocum
 
 the state did not admit that it had relied upon false information in denying parole nor did the plaintiff present any evidence that his prison file even contained any false information. We held in
 
 Slocum
 
 that prisoners do not state a due process claim by merely asserting that erroneous information may have been used during their parole consideration.
 
 Id.
 
 at 942. We also determined that prisoners do not have a due process right to examine their prison files as part of a general fishing expedition in search of false information that could possibly exist in their files.
 
 Id.
 
 In the case at bar, we are confronted with prison authorities who
 
 admit
 
 that information contained in Monroe’s files is false and that they relied upon such information, at least in part, to deny Monroe parole and to classify him as a sex offender. As we stated, the parole statute does not authorize state officials to rely on knowingly false information in their determinations.
 
 Thomas,
 
 691 F.2d at 489.
 
 [11]
 

 As an alternative ground for affirmance, the defendants urge this Court to adopt the reasoning set forth in the magistrate judge’s recommendation as support for denial of Monroe’s claim. In the magistrate judge’s report, the magistrate judge found that other evidence in Monroe’s file,
 
 e.g.,
 
 the toxicologist’s report and the nature of the murder, would have been sufficient evidence to classify Monroe as a sex offender and to deny him parole. Although
 
 *1439
 
 the magistrate judge may well have been correct, the determination of parole eligibility is not an appropriate decision for the magistrate judge or for this Court.
 
 Thomas,
 
 691 F.2d at 489 (holding federal courts should limit their interference in the decisions of state parole boards). These decisions are for the Board, and we are not at liberty to speculate as to reasons upon which they could have, but did not, rely.
 

 III. CONCLUSION
 

 For the foregoing reasons, we REVERSE the district court and REMAND with instructions that the district court enter an order requiring the defendants to expunge the false information from Monroe’s prison records.
 

 [1]
 

 . Alabama classifies prisoners into five groups: maximum, close, medium, minimum, and community.
 
 Hendking v. Smith,
 
 781 F.2d 850, 851 (11th Cir.1986). A minimum security prisoner may enjoy certain privileges,
 
 e.g.,
 
 assignment to an "honor farm” or receipt of short-term passes to leave the prison facility.
 
 Id.
 
 In 1980, the DOC adopted a rule that a prisoner who is determined to be a sex offender may not be classified in any status less secure than medium.
 
 Id.
 

 [2]
 

 . Monroe was apparently unaware at this point that the PSI stated that Linda Harden had been raped. His letter to DOC referred only to a "Cornors (sic) Report” which indicated that Linda Harden had sexual relations prior to death. Monroe argued in his letter that his file contained no evidence indicating whether Linda Harden had consented to such relations or even whether Monroe was the partner in such relations.
 

 [3]
 

 . It appears that Monroe had been classified as a minimum security prisoner before the rule disqualifying sex offenders from this status had been adopted. Apparently, the DOC did not apply this rule retroactively.
 

 [4]
 

 . The regulation criteria for placement in minimum custody contains a footnote that clarifies the policy on what is meant by sex offenses:
 

 This is not limited to present or past convictions for a sex offense. It may also apply where the details furnished to the DOC by the courts, by PSI, by District Attorney, or other official source show that a sex offense was involved in the commission of the crime for which the inmate was convicted.
 

 Rl-9-Exhibit B.
 

 [5]
 

 . Monroe admitted to speaking to a parole officer, but denied that he confirmed any of the facts contained in the PSI or that the officer to whom he spoke was Joe Jackson.
 

 [6]
 

 . The motion for summary judgment was stricken for failure to comply with Local Rule 8 of the United States District Court for the Southern District of Alabama, which requires that such motions be accompanied by suggested "Determinations of Undisputed Fact and Conclusions of Law.”
 

 [7]
 

 . This case has had a torturous history before reaching this Court. Monroe first filed a motion for summary judgment on November 20, 1987, five days before the deadline established by the Magistrate in his scheduling order. On November 25, the Magistrate struck Monroe’s motion for failure to comply with Local Rule 8. Monroe then filed a motion requesting additional time to address the deficiencies in his summary judgment motion on December 10, 1987, but the motion was denied. On December 17, 1987, Monroe filed an amended motion for summary judgment. The defendants never responded to this motion. On June 9, 1988, Monroe filed a request with the magistrate judge for information regarding his motion for summary judgment but received no response. On September 16, 1988, Monroe filed a notice of intent to seek a writ of mandamus ordering judgment in his favor on the grounds that the defendants had failed to respond to his motion for summary judgment. On October 24, 1990, the magistrate ruled that Monroe’s summary judgment motion was filed beyond the deadline established in the scheduling order and thus was not properly before the court and that there were genuine issues of material fact precluding summary judgment.
 

 [8]
 

 .Monroe asserts that the Fourth Circuit has recognized a due process right to be fairly considered for parole.
 
 See Paine v. Baker,
 
 595 F.2d 197 (4th Cir.),
 
 cert. denied,
 
 444 U.S. 925, 100 S.Ct. 263, 62 L.Ed.2d 181 (1979). In
 
 Paine,
 
 the Fourth Circuit held that a prisoner has a due process right to have prejudicial information deleted from prison files if the following elements are proven: (1) specific information exists in the prisoner’s file; (2) the information is false; and (3) the information has been relied upon to a constitutionally significant degree.
 

 In recognizing a prisoner’s right to have false, prejudicial information expunged from a prison
 
 *1437
 
 file, the Fourth Circuit equated a convicted person’s liberty interest in parole already granted with the desire for parole not yet received. The Fourth Circuit decided
 
 Paine
 
 before the Supreme Court issued its opinion in
 
 Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,
 
 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), which rejected the theory that the Constitution protects a conditional liberty interest in parole not yet granted. The Supreme Court specifically distinguished between an inmate's desire for parole and a parolee’s conditional liberty interest in parole that has been actually granted. Accordingly,
 
 Paine
 
 is not persuasive authority in the case at bar.
 

 [9]
 

 . Section 15-22-26 of the Alabama Code sets forth the following Standards for the release of prisoners on parole:
 

 No prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned in prison, but only if the board of pardons and paroles is of the opinion that there is reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law and that his release is not incompatible with the welfare of society. If the board shall so determine, such prisoner shall be allowed to go upon parole outside of prison walls and enclosure upon such terms and conditions as the board shall prescribe, but to remain while thus on parole in the legal custody of the warden of the prison from which he is paroled until the expiration of the maximum term specified in his sentence or until he is fully pardoned.
 

 [10]
 

 . In
 
 Andrus v. Lambert,
 
 424 So.2d 5, 9 (Ala.Crim.App.1982), the Alabama Court of Criminal Appeals stated that "parole should not be denied for false, insufficient, or capricious reasons.”
 
 Andrus
 
 further states that a prisoner has a right to be properly considered for parole and that the "paroling authority must comply with constitutional requirements and may not determine parole eligibility on improper grounds."
 
 Id.
 
 at 9.
 
 Andrus
 
 relied principally on a Seventh Circuit case,
 
 Christopher v. United States Bd. of Parole,
 
 589 F.2d 924, 927 (7th Cir.1978), which was decided before
 
 Greenholtz, supra.
 
 In
 
 Christopher,
 
 the Seventh Circuit noted that, under federal regulations, once a federal prisoner had been given an effective parole date his release could be denied only upon the occurrence of a few specified events.
 
 Christopher
 
 at 928. The court held that these regulations created an expectancy of parole sufficient to trigger the protection of the Due Process Clause.
 
 Id.
 
 at 927. Unlike the regulation at issue in
 
 Christopher,
 
 the Alabama parole statute creates no expectancy of parole entitled to the protections of the Due Process Clause.
 
 Thomas, supra.
 
 Moreover, the question of whether a state law creates a federally protected right does not depend exclusively on the construction of that law by state courts.
 
 Ellard v. Alabama Bd. of Pardons and Paroles,
 
 824 F.2d 937, 944 & n. 7 (11th Cir.1987),
 
 cert. denied,
 
 485 U.S. 981, 108 S.Ct. 1280, 99 L.Ed.2d 491 (1988). Accordingly, although we find
 
 An-drus
 
 instructive, we rely instead upon
 
 Thomas, supra.
 

 [11]
 

 . Our holding also does not conflict with the Supreme Court's statement in
 
 Greenholtz, supra,
 
 that there is no constitutional guarantee that executive decisions will be free of error.
 
 Greenholtz,
 
 442 U.S. at 7, 99 S.Ct. at 2103-04. Nevertheless, the decision in
 
 Greenholtz
 
 can in no way be read to authorize state officials to knowingly use false information in making their parole determinations.