[This opinion has been published in *Ohio Official Reports* at 69 Ohio St.3d 123.]

THE STATE EX REL. HATTIE, APPELLEE, *v*. GOLDHARDT, ACTING CHIEF, ADULT PAROLE AUTHORITY, APPELLANT.

[Cite as *State ex rel. Hattie v. Goldhardt*, 1994-Ohio-81.]

*Mandamus to compel Adult Parole Authority to "correct [relator's] risk assessment score sheet"—Writ denied, when.*

(No. 92-2057—Submitted February 1, 1994—Decided April 27, 1994.)

APPEAL from the Court of Appeals for Franklin County, No. 91AP-1117.

_____

{¶ 1} Appellee, Terrence W. Hattie, was convicted in 1983 of aggravated robbery and felonious assault and is serving a four-to-twenty-five-year sentence. In this mandamus action, Hattie alleges that the Adult Parole Authority ("APA") denied him parole on the basis of false information.

{¶ 2} Under the APA's "parole guidelines," the APA fills out a "risk assessment/aggregate score" sheet (hereinafter "scoresheet") on a candidate for parole. The scoresheet lists certain relevant factors, such as "Number of Prior Felony Convictions (or Juvenile Adjudications)," "Age at Arrest Leading to First Felony Convictions," "Alcohol Usage Problems," and "Other Drug Usage Problems." Each factor is assigned a numerical score: the higher the score, the greater the risk of paroling the inmate. These scores are totaled and converted to a "risk score," which is added to the "offense score" (based on the type of offense) and "institution score" (based on behavior in prison) to yield an "aggregate score." The parole board then consults a chart, which recommends an outcome based on the aggregate score and the degree of the inmate's felony. These guidelines are not codified in the Revised Code or Administrative Code; thus, the APA has discretion to use them or not, and to follow or deviate from the recommended outcome.

**{¶ 3}** In Hattie's case, the guidelines were used.  Hattie received two points for "Number of Prior Felony Convictions (or Juvenile Adjudications)" because in 1977, at age sixteen, he had been adjudicated delinquent on charges of receiving stolen property, R.C. 2913.51.  Hattie also received four points for "Age at Arrest Leading to First Felony Convictions," indicating that his first such arrest occurred at age "19 [or] under."

**{¶ 4}** As to "Other Drug Usage Problems," the APA placed Hattie in the category "Frequent abuse; serious disruption [of functioning]; needs treatment," resulting in four points.  APA records indicate that Hattie has abused drugs since age thirteen and admitted having a drug problem in 1989.

**{¶ 5}** Hattie's total score was thirty-two, yielding a risk score of three and an aggregate score of four.  Parole was denied.  Hattie has received identical scores on subsequent scoresheets.

**{¶ 6}** On October 7, 1991, Hattie filed this action in the court of appeals.  He sought a writ of mandamus ordering the APA to "correct [his] risk assessment score sheet."  Hattie claimed that, because his 1983 aggravated robbery and felonious assault convictions are his only felony convictions, his scores for "Prior Felony Convictions (or Juvenile Adjudications)" and "Age at Arrest Leading to First Felony Conviction" are too high.  Hattie further claimed that he has no drug problem causing "serious disruption in functioning."

**{¶ 7}** The court of appeals overruled a motion to dismiss, holding that the APA has a clear legal duty, rooted in the Fourteenth Amendment's Due Process Clause, "to correct erroneous information concerning relator's past criminal record."  The parties then submitted their evidence.  The APA submitted a copy of its file on Hattie.  Hattie submitted an affidavit stating that he has never been convicted of a drug offense or "missed work due to drugs," has abstained from certain drugs since 1982, and has "never been *diagnosed* as a drug abuser, nor *treated* for drug abuse."  (Emphasis added.)

**{¶ 8}** The court of appeals found that "Hattie was never convicted of a felony before 1983 nor adjudicated a juvenile delinquent based upon felony conduct," and that the APA's file on Hattie "provides no basis for * * * assessing him points for 'Other Drug Usage Problems.'" The court of appeals therefore granted a writ of mandamus ordering the APA "to use accurate scores on the sheet, based upon its own records provided to the court." The court emphasized that it was not ordering the APA to parole Hattie or grant a new parole hearing.

**{¶ 9}** The cause is before us on appeal as of right.

————————————

*Terrence W. Hattie*, *pro se*.

*Lee Fisher*, Attorney General, and *Donald A. Cataldi*, Assistant Attorney General, for appellant.

*Gloria Eyerly*, Ohio Public Defender, and *Kenneth R. Spiert*, Assistant Public Defender, urging affirmance for *amicus curiae*, Ohio Public Defender Commission.

————————————

*Per Curiam.*

**{¶ 10}** To obtain a writ of mandamus, the relator must show that he has a clear legal right to the relief requested, the respondent has a clear legal duty to grant it, and no adequate remedy at law exists to vindicate the claimed right. *State ex rel. Berger v. McMonagle* (1983), 6 Ohio St.3d 28, 29, 6 OBR 50, 50-51, 451 N.E.2d 225, 226-227. The court of appeals found that respondent had a clear legal duty to "correct" Hattie's scoresheet, a duty derived from the Due Process Clause.[1]

**{¶ 11}** We cannot agree. The Fourteenth Amendment forbids a state to "deprive any person of life, liberty, or property, without due process of law * * *."

———

1. *Amicus* urges us to hold that Ohio law creates an independent legal duty, enforceable in mandamus, to maintain accurate records. We decline to consider this question: the parties have not raised it, nor did the court of appeals consider it. In any case, Hattie would not be entitled to the writ even were we to accept *amicus'* argument, since he has not proven the scoresheet inaccurate.

Hence, the Due Process Clause applies "only if a government action will constitute the impairment of some individual's life, liberty or property." 2 Rotunda & Nowak, Treatise on Constitutional Law (1992) 580, Section 17.2.

{¶ 12} "There is no constitutional or inherent right * * * to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex* (1979), 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668, 675. A prisoner who is denied parole is not thereby deprived of "liberty" if state law makes the parole decision discretionary. *State ex rel. Blake v. Shoemaker* (1983), 4 Ohio St.3d 42, 4 OBR 86, 446 N.E.2d 169; *State ex rel. Ferguson v. Ohio Adult Parole Auth.* (1989), 45 Ohio St.3d 355, 356, 544 N.E.2d 674, 675.

{¶ 13} Under R.C. 2967.03, the parole decision is discretionary. *Blake*, *supra*; *Ferguson*, *supra*. The APA's use of internal guidelines does not alter the decision's discretionary nature. Because neither statute nor regulation created the guidelines, and the board need not follow them, they place no "substantive limits on official discretion." *Olim v. Wakinekona* (1983), 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813, 823. Thus, Hattie was deprived of no protected liberty interest when he was denied parole, and can claim no due process rights with respect to the parole determination. *Jago v. Van Curen* (1981), 454 U.S. 14, 20-21, 102 S.Ct. 31, 35, 70 L.Ed.2d 13, 19.

{¶ 14} Two federal cases do hold that a parole candidate has a due process right to have errors expunged from his records. See *Paine v. Baker* (C.A.4, 1979), 595 F.2d 197, cited by the court of appeals, and *Monroe v. Thigpen* (C.A.11, 1991), 932 F.2d 1437. However, we find neither case persuasive. *Paine*, a pre-*Greenholtz* case, did not consider whether the state's parole laws created a liberty interest. In *Monroe*, the court recognized that the state's law did not create a liberty interest in parole, 932 F.2d at 1441, yet held that the state behaved "arbitrarily and capriciously" in retaining concededly false information in the prisoner's file. *Id.* at

1442. The *Monroe* court simply failed to recognize that a state action cannot violate procedural due process unless it deprives someone of "life, liberty, or property."

{¶ 15} Because Hattie is not being deprived of life, liberty, or property, he cannot invoke due process to challenge his scoresheet. Thus, he has failed to demonstrate that the APA has a clear legal duty to change his scores. It follows that he is not entitled to the writ of mandamus, and the court of appeals erred in granting it.

{¶ 16} We note that, even if Hattie had a due process right to an accurate scoresheet, he did not prove the scoresheet inaccurate. Instead, the court of appeals effectively required the APA to prove its accuracy, and thus misallocated the burden of persuasion. See *State ex rel. Temke v. Outcalt* (1977), 49 Ohio St.2d 189, 190, 3 O.O.3d 248, 249, 360 N.E.2d 701, 702; *Hill v. State* (Ala.Crim.App. 1992), 594 So.2d 246, 248.

{¶ 17} The court of appeals found that "Hattie was never * * * adjudicated a juvenile delinquent based upon felony conduct." That finding is not supported by evidence. Hattie's 1977 delinquency adjudication was for receiving stolen property, which can be either a felony or a misdemeanor. See R.C. 2913.51(B) and 2913.71. Similarly, the court found "no basis for * * * assessing [Hattie] points for 'Other Drug Usage Problem.'" But the APA did not have to provide a basis for that assessment; Hattie had to prove it wrong. His carefully worded affidavit does not support his claim that he has no drug problem.

{¶ 18} Hattie has failed to show that the APA has a clear legal duty to alter his scoresheet. The Due Process Clause has no application here, for Hattie is not being deprived of liberty. Consequently, the court of appeals improperly awarded the writ of mandamus, and its judgment must be reversed.

*Judgment reversed.*

MOYER, C.J., A.W. SWEENEY, DOUGLAS, WRIGHT, RESNICK and F.E. SWEENEY, JJ., concur.

PFEIFER, J., dissents.

_____