[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-11173
Non-Argument Calendar

_____

D.C. Docket No. 2:10-cv-02583-RDP-RRA

TONY LEE SMITH,

Plaintiff-Appellant,

versus

GOVERNOR FOR THE STATE OF ALABAMA,
COMMISSIONER, ALABAMA DEPARTMENT OF CORRECTIONS,
TERRANCE MCDONNELL,
Associate Commissioner for the Alabama Department of Corrections,
GRANTT CULLIVER,
Associate Commissioner for the Alabama Department of Corrections,
JAMES DELOACH,
Associate Commissioner for the Alabama Department of Corrections, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(April 2, 2014)

Before TJOFLAT, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Tony Lee Smith is an Alabama prison inmate currently incarcerated in the St. Clair Correctional Facility in Springville, Alabama. He is a practitioner of Odinism, an ancient pre-Christian faith grounded in ancient Icelandic sagas and runic mysticism.[1] In February 2001, while he was incarcerated in the Limestone Correctional Facility in Capshaw, Alabama, he requested the Religious Activities Review Committee (RARC) of the Alabama Department of Corrections (ADOC) to recognize Odinism as a religion and, among other things, to designate a place in the prison compound for the worship of Odinism and the performance of its rites and to provide an outdoor fire pit for that purpose. The RARC granted Smith's request for the recognition of Odinism as a religion, but denied his "request for a 'designated place of worship' to perform the Odinist rites. [T]he Committee expressed concern that Odinism's alleged connections with Neo–Nazism and white supremacist beliefs would pose security problems in the prison, were Odinism to be granted a designated area of worship in the open, common area of the prison. . . . [T]he Committee [also] declined Smith's request for a fire pit, limiting him instead to a small candle." *Smith v. Allen*, 502 F.3d

---

[1] For a discussion of Odinism, *see Borzych v. Frank*, 340 F. Supp.2d 955, 960 (W.D. Wis. 2004), and *Rust v. Clarke*, 883 F. Supp. 1293, 1297-98 (D. Neb. 1995).

1255, 1261 (11th Circuit 2007) (*abrogated on other grounds by Sossamon v. Texas*, 563 U.S. __, 131 S.Ct. 1651, 179 L.Ed.2d 700 (2011).[2]

On August 15, 2007, during his current incarceration in the St. Clair Correctional Facility, Smith presented the RARC with a request that, in addition to recognizing Odinism as a religion, the Alabama prison regulations be amended to include a list of items needed to practice the religion, including a designated outdoor place of worship with a fire pit.[3]

On May 13, 2010, the RARC issued a response. Although the prison regulations were not amended as Smith requested, the RARC approved his possession of several of the items he purportedly needed to practice Odinism. The RARC denied Smith's request for a designated outdoor place of worship with a fire pit.[4] The next day, May 14, Smith, proceeding *pro se*, filed the instant lawsuit

---

[2] In December 2001, Smith brought *Smith v. Allen* against the members of the RARC, alleging that they had violated his rights under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-5, and the U. S. Constitution by refusing to grant him permission to engage in certain practices of Odinism and to provide a designated area in the prison compound and a fire pit so he could have worship services. The RARC recognized Odinism as a religion during the litigation of that lawsuit.

[3] Other items Smith requested to be included in the prison regulations were: a cigar box size ritual/sacred items box, a ceremonial mead horn, a "bowli" or ritual bowl, a Thor's Hammer necklace, a set of handcrafted rune stones and a small rune bag, a candle for indoor use during inclement weather, a leather study folder, a quartz crystal, five holy day feasts, and the sacred texts of Odinism, the Poetic Edda and Prose Edda.

[4] The RARC also denied Smith's request that the Poetic Edda and Prose Edda be recognized as the sacred texts of the Odinist, saying that "Religious literature and assigning 'sacredness' to those writings or items of any religion is the practice of that specific religion. The RARC only affirms beliefs as those beliefs are authoritatively documented/published by that

3

against the Governor of Alabama, the Commissioners of ADOC, other state officials, and employees of the St. Clair Correctional Facility.  Smith's complaint sought legal and equitable relief pursuant to 42 U.S.C. § 1983 for the defendants' alleged violation of his rights under the First and Fourteenth Amendments and the Religious Land Use and Institutional Persons Act, 42 U.S.C. § 2000cc (RLUPIA), in imposing substantial burdens on his practice of Odinism by, among other things, requiring him to produce documents to support his requests for recognition of Odinism as an established religion, denying him religious items that other religious groups are permitted to have, confiscating religious books and art, operating faith-based dorms, retaliating against him for his religious beliefs and for filing lawsuits, and for discriminating against him because of his adherence to a non-Christian religion.

The defendants moved the District Court to dismiss Smith's complaint, contending, in the main, that a responsive pleading could not reasonably be framed because the complaint's allegations were so ambiguous that it was impossible to determine which allegations applied to which defendants. The court granted their motions and gave Smith leave to amend.[5]  Smith filed an amended complaint, and

---

religion."

[5]  In granting Smith leave to amend, the court instructed him as follows:

In the amended complaint, plaintiff should name as defendants only those persons who violated his constitutional rights....  Plaintiff should also state

4

the court, after receiving it, entered an Order for Special Report directing the defendants to file a special report—under oath or accompanied by affidavits—in response to the amended complaint's allegations for consideration as a motion for summary judgment. The same order informed Smith that he should file counter affidavits if he wished to rebut the representations of fact made in the defendants' special reports and oppose the entry of summary judgment. The defendants filed their special reports by December 15, 2011; Smith filed a response to their reports on January 24, 2012.

The District Court referred the matter to the Magistrate Judge, and, on February 13, 2013, he issued a report recommending that the District Court grant the defendants summary judgment. On March 14, 2013, the District Court, after

---

clearly how each named defendant violated his constitutional rights, the dates on which the incidents occurred, and where the incidents occurred. PLAINTIFF MUST CLEARLY SET FORTH THE FACTS CONCERNING ANY INCIDENT ABOUT WHICH HE COMPLAINS. To the extent the plaintiff is complaining about administrative regulations he should include copies of the regulation about which he complains. Plaintiff must also include a copy of any ruling of the Department of Corrections about which he complains. The plaintiff is ADVISED that conclusory and general assertions are not sufficient to state a claim upon which relief under § 1983 can be granted. See *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). The amended complaint must include all of plaintiff's claims in this action; IT SHOULD NOT REFER BACK TO THE ORIGINAL COMPLAINT. Plaintiff is ADVISED that the Court will consider only the claims set forth in the amended complaint and only those defendants against whom the plaintiff makes a specific allegation.

considering and rejecting Smith's objections to the report, granted the defendants summary judgment.

Smith now appeals the judgment, arguing that the District Court abused its discretion in refusing to grant his discovery requests, and in rejecting some of the claims he presented in his amended complaint.   We find no abuse of discretion in the District Court's discovery ruling and no error in its summary rejection of the claims at issue in this appeal; we therefore affirm the court's judgment.

## I.  Discovery

Smith argues that the District Court erred in denying his requests for discovery.  After the court ordered the defendants to submit a special report in lieu of a response to Smith's amended complaint, it ordered that all discovery cease unless a party sought leave of court to conduct discovery.  As applied to Smith, the order required him to specify in his discovery motion the nature of the discovery sought and the reason why the disclosures in the defendant's special reports and his response were inadequate.  Smith sought leave on several occasions. Each time the court denied relief because his motion failed to explain why the disclosures in the special reports were inadequate.  The same was true regarding Smith's motions to compel production.  Smith argues that the court's rulings prejudiced his case.  For example, he sought copies of his religion-based requests to the RARC, which included the items such as a quartz crystal and a sacred box that he needed to

6

practice Odinism, to bolster his claim that the defendants violated his RLUIPA rights by imposing a substantial burden on his practice of Odinism.

A district court has broad discretion under Rule 26 of the Federal Rules of Civil Procedure to compel or deny discovery; we therefore review such rulings for abuse of discretion. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306 (11th Cir. 2011). "Discretion means the district court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *Id.* (quotation omitted). Accordingly, we will not set aside a district court's discovery ruling unless the court has made a clear error of judgment or has applied the wrong legal standard. *Id.* at 1307. Even then, we will not grant relief unless the appealing party has shown that the denial of discovery resulted in substantial harm to his case. *Id.*

Judicial intervention in discovery should limit the scope to the reasonable needs of the action. *Id.* Where a significant amount of discovery has been obtained, and it appears that further discovery would not be helpful in resolving the issues, a request for further discovery is properly denied. *Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274, 1286 (11th Cir. 2003).

We conclude that the District Court acted within its discretion in denying Smith's discovery requests. *Josendis*, 662 F.3d at 1306; *see also Iraola*, 325 F.3d at 1286. None of Smith's motions for leave to conduct discovery or to compel

7

production met the requirements the court set—specifically, the motions either did not explain why the disclosures in the defendants' special reports were inadequate or specify the exact nature of the information being sought.  In sum, we find no merit in Smith's discovery challenge.

## II.  Summary Judgment

We review a district court's grant of summary judgment *de novo*.  *Skop v. City of Atlanta,* 485 F.3d 1130, 1136 (11th Cir. 2007).[6]  Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  *Id.* (quotation omitted).  In making this determination, we view "the evidence and all factual inferences therefrom in the light most favorable to the non-moving party," and resolve "all reasonable doubts about the facts in favor of the non-movant."  *Id.*

Section 1983 of Title 42 of the U.S. Code provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall

---

[6]  Smith does not challenge the District Court's summary dismissal of five of the defendants from the case because they had been sued in their supervisory capacity and *respondeat superior* does not apply to claims under 42 U.S.C. § 1983.  Consequently, Smith waives on appeal any challenge to the dismissal from the case of Alabama Governor Bob Riley; ADOC Commissioner Richard Allen; and ADOC Associate Commissioners Terrance McDonnell, James DeLoach, and Grantt Culliver.  *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (holding that, though *pro se* pleadings are construed liberally, *a pro se* appellant abandons an issue if he fails to raise it in his initial brief).

be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  To state a claim under § 1983, a plaintiff must establish that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50, 119 S.Ct. 977, 985, 143 L.Ed.2d 130 (1999).

A. Religious Freedom

Smith argues that the District Court erred in granting summary judgment on his RLUIPA claim, as the record discloses that the defendants imposed a substantial burden on his practice of Odinism.[7]  Specifically, he challenges the decision by the RARC to deny his requests for four items for religious use:  a sacred container for runes, a leather folder for study materials, a quartz crystal, and an outdoor fire pit.[8]  The RARC denied his requests solely because he failed to

---

[7] RLUIPA, 42 U.S.C.A. § 2000cc-1, Protection of religious exercise of institutionalized persons, states, in pertinent part:

(a) General rule
No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution,  . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--
(1) is in furtherance of a compelling governmental interest; and
(2) is the least restrictive means of furthering that compelling governmental interest.

[8] Smith's initial suit addressed RARC's denial of a number of religious items, but Smith only mentions four of the items in his appeal brief.

provide the committee with an authoritative source showing that the items were necessary for his religious worship.  He also argues that the court wrongly concluded that he failed to prove his RLUIPA claim because he did not point to any authoritative sources in support of his requests for the religious items.  Smith contends that requiring him to cite to religious sources placed a heightened burden on him, as RLUIPA does not require plaintiffs to prove the truth of their beliefs.

The First Amendment provides, "Congress shall make no law . . . prohibiting the free exercise [of religion]."  U.S. Const. amend. I.  The Free Exercise Clause of the First Amendment is applicable to the states through the Due Process Clause of the Fourteenth Amendment.  *Cantwell v. Connecticut*, 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940).  In addition, Section 3(a) of RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion."  *Cutter v. Wilkinson*, 544 U.S. 709, 721, 125 S.Ct. 2113, 2122, 161 L.Ed.2d 1020 (2005).  More expansive than prisoners' rights under the First Amendment, RLUIPA "affords to prison inmates a heightened protection from government-imposed burdens, by requiring that the government demonstrate that the substantial burden on the prisoner's religious exercise is justified by a compelling, rather than merely a legitimate, governmental interest."  *Allen*, 502 F.3d at 1266.  To establish a *prima facie* case under section 3

10

of RLUIPA, a plaintiff must demonstrate "1) that he engaged in a religious exercise, and 2) that the religious exercise was substantially burdened." *Id.* at 1276; *see also* 42 U.S.C. § 2000cc-1(a). Once a plaintiff has made this *prima facie* showing, the defendant bears the burden to prove that the challenged regulation is the least restrictive means of furthering a compelling governmental interest. *Allen*, 502 F.3d at 1276.

"[A]n individual's exercise of religion is 'substantially burdened' if a regulation completely prevents the individual from engaging in religiously mandated activity, or if the regulation requires participation in an activity prohibited by religion." *Midrash Sephardi, Inc.* v. *Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004) (discussing a town zoning ordinance). "While it is true that courts are not to inquire into the centrality of a particular religious tenet in undertaking the substantial burden analysis, at a minimum the substantial burden test requires that a RLUIPA plaintiff demonstrate that the government's denial of a particular religious item or observance was more than an inconvenience to one's religious practice." *See Allen*, 366 F.3d at 1278. Further, we have declined to find that the denial of a requested religious item substantially burdened a prisoner, based solely on the fact that he sincerely believed the items were necessary to his practice. *See id.* We explained as follows:

> If the word 'substantial' in the statutory phrase 'substantial burden,' 42 U.S.C. § 2000cc-1(a), is to retain any meaning, it must, at a

11

minimum, be construed as requiring something more than solely the denial of a request that is sincere.  An alternate approach . . . would result in the word 'substantial' in § 2000cc-1(a) as being mere surplusage, since every governmental action denying a requested item to be used in religious observance would give rise to a *prima facie* RLUIPA claim.

*Id.*

Smith failed to establish a *prima facie* case under RLUIPA because he failed to show that the RARC's denial of the four items in question had substantially burdened his religious practice.  *Allen*, 502 F.3d at 1276.  Smith offered no evidence establishing that the four items were fundamental to his practice of Odinism or that the absence of the items caused anything more than a mere inconvenience on his religious exercise.  *See Midrash*, 366 F.3d at 1227.  While Smith presented to the court statements in his own affidavit that he needed these items for worship, those personal assertions—without any support from authoritative sources—cannot meet the standard for proving a substantial burden.  *Allen*, 366 F.3d at 1278-79.  Moreover, Smith failed to demonstrate how the RARC's demand for prisoners to provide authoritative sources in support of their requests for religious items constituted a substantial burden, as the failure to name a source does not mandate that an inmate's request be denied, nor does it prevent a prisoner from actually engaging in his religious activities.  Smith therefore fell short of demonstrating that the approval of his religious items hinged on his ability

12

to provide an authoritative source.  *Allen*, 502 F.3d 1276; *Midrash*, 366 F.3d at 1227.  The District Court did not err in denying this RLUIPA claim.

B.  Equal Protection

Smith next argues that the court erred in denying his equal protection claims based on the denial of his religious-items requests.[9]  Specifically, he contends that Native American inmates may use an outdoor fire for their worship services, but Smith and other Odinist inmates are treated differently.  Additionally, inmates practicing nature-based religions are allowed to keep a sacred box, and nearly all religions provide a cover for sacred texts, yet Smith has been denied both items. Smith also contends that Christian inmates are served "free world" food—that is, food delivered from outside the prison—during special occasions, yet he has been denied the right to have particular foods during the feast days for Odinism.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  A prisoner asserting an equal protection claim must demonstrate that "(1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race."

---

[9]  As with the RLUIPA claim, Smith limits his argument on appeal regarding his equal protection claims to RARC's denial of only a few requests.

13

*Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001) (quotation omitted).  Proof of discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.  *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977).

Smith's equal protection claims fail because he failed to produce any evidence of discriminatory intent.  *Village of Arlington Heights*, 429 U.S. at 265, 97 S.Ct. at 563.  The defendants presented evidence that Smith's request for a fire pit had been denied because he already had access to a candle.  Furthermore, the evidence showed that Smith's requests for the sacred box and leather covering were denied because research did not show them to be religiously necessary for Odinism.  As there was no discriminatory treatment, summary judgment was proper as to these equal protection claims.   *See Jones*, 279 F.3d at 946-47.

Finally, as for Smith's claim that he was denied free world food solely because he was an Odinist, he presented no evidence that either he or other Odinists had actually made requests for free world or specialty foods, or that prison officials had explicitly denied him those types of food for the feasts.  *Id.*  The District Court did not err in denying these equal protection claims.

C. Retaliation

14

Smith argues that the District Court erred in rejecting his retaliation claims,[10] in which he alleged that the defendants engaged in adverse action in response to his pursuit of his religious rights.   First, he contends that the defendants retaliated against him for suing them by transferring him to a higher level of prison security on two occasions, once in 2008 and another time in March 2011.  He says that the defendants' proffered reason for the transfers—that they were routine prison-to-prison swaps—was effectively a sham.  Second, Smith argues that he received a disciplinary write-up based on knowingly false information and was not allowed to call witnesses during a disciplinary proceeding.  Finally, Smith argues that, as another example of retaliation, prison officials confiscated his books as contraband.

 "The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003).  An inmate raises a First Amendment claim of retaliation if he shows that the prison official disciplined him for filing a grievance or lawsuit concerning the conditions of his imprisonment. *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989).

---

[10]  In his complaint, Smith listed 14 instances of alleged retaliation.  On appeal, he only challenges the court's finding on three of the alleged instances.

15

To prove a retaliation claim under the First Amendment, an inmate needs to show (1) that his speech or act was constitutionally protected, (2) that he suffered an adverse action from prison officials that would deter a person of ordinary firmness from engaging in such speech or act, and (3) that the protected speech or conduct and adverse action were causally connected. *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008). "[O]nce the plaintiff ... establish[es] that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he ... prevail[s] on ... summary judgment." *Id.* at 1278 (quotation omitted).

Even though a prisoner does not have a liberty interest in not being transferred to another prison, he may state a retaliation claim by alleging that he was transferred due to his filing of a grievance or lawsuit concerning his conditions of his confinement. *See Bridges v. Russell*, 757 F.2d 1155, 1156-57 (11th Cir. 1985). However, if a prisoner violates a legitimate prison regulation, he is not engaged in protected conduct, and he cannot establish the first prong of a retaliation claim. *Mosley*, 532 F.3d at 1277. In other words, the prisoner must show that, as a subjective matter, a motivation for the defendant's adverse action was the prisoner's grievance or lawsuit. *Id.* at 1278. The question is whether a

16

reasonable fact finder would find that the defendants would have disciplined the prisoner even in the absence of the protected conduct. *Id*.

Smith's act of filing suit against the defendants qualifies as constitutionally protected conduct, and prison transfers qualify as adverse actions for purposes of retaliation. *See Wildberger*, 869 F.2d at 1468; *Bridges*, 757 F.2d at 1156-57. Smith's problem is that the instant lawsuit was filed in May 2010, while Smith's first prison transfer occurred in 2008. Hence, there is no causal connection between the lawsuit and the supposed adverse action. As for the allegedly retaliatory transfer in March 2011, even assuming that there is a causal connection and that Smith made out a *prima facie* case for retaliation, the defendants were entitled to summary judgment because the reason for transferring Smith—the "Warden to Warden" swap program between prisons—would have applied regardless of whether a lawsuit had been filed. *Mosley*, 532 F.3d at 1278.

As with the remaining three retaliation claims, all three arguably make the *prima facie* case. *See id.* at 1277. However, for each of these adverse actions, the defendants provided sufficient reasons why the actions would have taken place notwithstanding Smith's lawsuit. *See id.* First, Smith's books were confiscated because they qualified for the "Security Threat Group," and were deemed contraband. As for the absence of witnesses during Smith's disciplinary hearing regarding the contraband, the defendants stated that neither of Smith's requested

witnesses was needed because the witness was not present at the time the contraband was confiscated.  Finally, as Smith was found guilty of possessing contraband, a reasonable fact finder would conclude that Smith would be disciplined for such an infraction, even in the absence of the lawsuit.  *See Mosley*, 532 F.3d at 1278.  The District Court did not err in dismissing these retaliation claims.

D. Establishment Clause

Smith argues that the District Court erred in concluding that the prison's faith based honor dorm did not violate his constitutional rights.  He contends that the dormitory allows inmates to receive mandatory class credit for attending classes based on Christianity, Islam, Buddhism, and Native American religions. Odinism is not afforded such status.

The Establishment Clause of the First Amendment states, "Congress shall make no law respecting an establishment of religion."  U.S. Const. amend. I.  This restriction has been made applicable to states, as well as state-created entities and their employees, through the Due Process Clause of the Fourteenth Amendment. *Holloman v. Harland*, 370 F.3d 1252, 1284 (11th Cir. 2004).

*Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d. 745 (1971), sets forth a three-prong test for determining whether a government program is permissible under the Establishment Clause:  (1) the program must have a secular

legislative purpose; (2) the principal or primary effect is one that neither advances nor inhibits religion; and (3) the program does not foster an excessive government entanglement with religion. *Holloman*, 370 F.3d at 1284. The "excessive entanglement" component of the *Lemon* test has been interpreted to mean that "some governmental activity that does not have an impermissible religious effect may nevertheless be unconstitutional, if in order to avoid the religious effect government must enter into an arrangement which requires it to monitor the activity." *Nartowicz v. Clayton Cnty. School Dist.*, 736 F.2d 646, 649 (11th Cir. 1984). "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Glassroth v. Moore*, 335 F.3d 1282, 1299 n.3 (11th Cir. 2003) (quotation omitted).

The record shows that the faith based honor dorm had a primary secular purpose, as its stated focus was to teach inmates various life and job skills. *Holloman*, 370 F.3d at 1284. Additionally, the principal effect of the program neither advanced nor prohibited any particular religion, as the dorm's spiritual-education element was only one of 20 suggested areas of programming, all of which were secular. Finally, the record contains no evidence that granting credits to classes about some, but not all, religions caused ADOC to become excessively entangled with religion. *Holloman*, 370 F.3d at 1284; *Nartowicz*, 736 F.2d at 649.

The faith based honor dorm claim fails all three prongs of the *Lemon* test. Summary judgment was therefore appropriate.

E.  Due Process – Security Threat Group (STG Designation)

Smith argues that his due process rights were violated when the defendants wrongly concluded that his confiscated property featured symbols of the Southern Brotherhood, an STG group.  This false designation deprived him of his property as well as liberty interests, and ultimately led to the denial of his parole in September 2012.

The Due Process Clause of the Fourteenth Amendment protects against deprivations of life, liberty, or property without due process of law.  *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).  The Supreme Court has identified two situations in which a prisoner, already deprived of his liberty, can be further deprived of his liberty, thus triggering due process guarantees:  (1) a change in the conditions of the prisoner's confinement that is so severe that it essentially exceeds the court-imposed sentence, and (2) when the State has consistently bestowed a benefit to prisoners by statute or policy, and the deprivation of that benefit imposes a hardship on the prisoner that is atypical of ordinary prison life.  *Id.* (citing *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995)).  Prison inmates do not have a liberty interest in discretionary programs such as prison classifications.  *See, e.g.*, *Moody v. Daggett*, 429 U.S. 78, 88 n.9, 97 S.Ct.

274, 279 n.9, 50 L.Ed.2d 236 (1976) (rejecting the notion that every state action with adverse consequences for prison inmates, such as a prison classification, qualification for institutional programs, or eligibility for rehabilitative programs, violates a due process right).

We find no due process violation here because classifications used by prisons do not constitute liberty interests. *See Moody*, 429 U.S. at 88 n.9, 97 S.Ct. at 279 n.9. Moreover, even if the classification had qualified as a liberty interest, Smith failed to demonstrate that the classifications created a severe change in prison conditions or imposed a hardship that was atypical of ordinary prison life. *Bass*, 170 F.3d at 1318. Although he stated that he had been denied parole as a result of the "Southern Brotherhood" designation, Alabama's parole statute, Ala. Code § 15-22-26, does not confer a liberty interest protected by the Due Process Clause, as parole may be granted at the parole board's discretion. *Monroe v. Thigpen*, 932 F.2d 1437, 1441 (11th Cir. 1991). The District Court did not err in rejecting this due process claim.

F. Due Process – Post-Deprivation Proceeding

Smith argues that the confiscation and destruction of his artwork, during a search of his cell, was a direct result of the defendants' animus toward the religious content of his artwork. He concedes that an issue such as this normally would be resolved during a post-deprivation proceeding at the state level. However, the

21

post-deprivation remedy in this case would be inadequate, he says, for two reasons. First, his artwork was confiscated because ADOC officials were prejudiced toward his belief in Odinism. Second, the Alabama Board of Adjustment requires an incident report to assess a claim of property loss, yet officials had denied knowledge of the incident in question.

Prisoners have no reasonable expectation of privacy, and therefore no Fourth Amendment protection, in their prison cells. *Hudson v. Palmer*, 468 U.S. 517, 526, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984). Accordingly, a § 1983 suit cannot be based upon an illegal search, unless that search violated another constitutional provision or federal law. *See id*. at 530, 104 S.Ct. at 3202.

A state prisoner also does not have a Fourteenth Amendment due process claim for the intentional deprivation of his property, provided that a meaningful post-deprivation remedy is available. *Id*. at 533, 104 S.Ct. at 3204. The state remedy does not need to allow recovery to the same extent that a § 1983 suit would in order to be meaningful. *Id*. at 535, 104 S.Ct. at 3204-05. Alabama law provides for a Board of Adjustment to hear claims that a state employee damaged a prisoner's property. *See* Ala. Code § 41-9-60, 41-9-62(a)(1). Claimants have the right to file and prosecute their claim before the Board in person or through counsel, and the Board has the power to require state entities to furnish needed documents or provide witnesses. *Id.* §§ 41-9-63, 67(a).

As indicated above, Smith did not have a reasonable expectation of privacy in his cell. *See Hudson*, 468 U.S. at 526, 104 S.Ct. at 3200. Consequently, a search of his cell did not violate his Fourth Amendment rights, and he has no § 1983 cause of action arising from the search. *See id*. at 530, 104 S.Ct. at 3202. Moreover, his arguments that the Board of Adjustment is an inadequate remedy lack merit. The proceedings described by Ala. Code § 41-9-60, *et seq*. provide individuals such as Smith an opportunity to present their claims before a neutral body and for the Board to act as fact finder in determining whether compensation is warranted. *See* Ala. Code §§ 41-9-62(a)(1),67(a). Hence, the Board of Adjustment provided a meaningful post-deprivation proceeding; consequently, the District Court did not err in granting summary judgment on this claim.

AFFIRMED.[11]

---

[11] Smith seeks an award of costs in prosecuting this appeal. He cites no authority for such an award. His request is therefor denied.

23