[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 11, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-12048
Non-Argument Calendar

_____

D. C. Docket No. 03-00376-CV-4-SPM

DAVID ANSGAR NYBERG,

Petitioner-Appellant,

versus

JACKIE CRAWFORD, Director
Nevada DOC,

Respondent-Appellee,

AKR FLORIDA PAROLE COMMISSION,

Intervenor.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(June 11, 2008)**

Before BLACK, MARCUS and PRYOR, Circuit Judges.

PER CURIAM:

David Nyberg, a Florida prisoner housed in Nevada and proceeding *pro se*, appeals the district court's denial of his 28 U.S.C. § 2254 habeas corpus petition. We granted a Certificate of Appealability on the following two issues: (1) whether the state parole board improperly relied on false information in denying Nyberg parole, in violation of due process; and (2) whether the state parole board's failure to interview Nyberg and its application of Fla. Admin. Code Ann. R. 23-21.006(3)(b)(8), in denying parole, violated equal protection.

We review *de novo* a district court's denial of a § 2254 habeas corpus petition. *Davis v. Jones*, 506 F.3d 1325, 1331 (11th Cir. 2007). Where a state prisoner's claim was adjudicated on the merits in state court, federal courts may not grant habeas relief unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or unless a state court decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2). The AEDPA also mandates deference to a state court's factual determinations unless the petitioner can rebut that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

I.

Nyberg first argues that in 1998 and 2000, his parole file contained false information labeling him as a sexual offender. He asserts the Parole Commission claimed it never relied on such a label, but the Parole Commission admitted relying upon the entire official record in making its decisions. He further contends false information used against a parole candidate violates due process whether or not the Parole Commission admits the information is false. Nyberg contends he proved by a preponderance of the evidence the false information was used in his parole review.

"There is no constitutional right to parole in Florida." *Jonas v. Wainwright*, 779 F.2d 1576, 1577 (11th Cir. 1986). Where there is no liberty interest in parole, "the procedures followed in making the parole determination are not required to comport with standards of fundamental fairness." *O'Kelley v. Snow*, 53 F.3d 319, 321 (11th Cir. 1995) (quotations omitted).

However, we have held, even when there is no liberty interest in parole, that a state parole board treated a prisoner arbitrarily and capriciously in violation of due process by relying upon false information to deny parole. *Monroe v. Thigpen*, 932 F.2d 1437, 1442 (11th Cir. 1991). In *Monroe*, the State admitted a presentence investigation report that erroneously stated the defendant had raped his victim. *Id.*

at 1441.  Further, the State admitted it had relied upon that false information, at least in part, to deny parole and classify the defendant as a sexual offender.  *Id.* We distinguished our prior decision in *Slocum v. Georgia State Bd. of Pardons and Paroles*, 678 F.2d 940 (11th Cir. 1982), in which we found that prisoners do not state a due process claim by simply asserting that erroneous information might have been used during their parole consideration.  *Monroe*, 932 F.2d at 1442.

The state courts never explicitly addressed Nyberg's claim the Parole Commission mistakenly considered him a sex offender and used that mischaracterization to set his presumptive parole release date (PPRD).  The evidence indicates Nyberg was treated for sexual-related problems.  *See  Nyberg v. State*, 389 So. 2d 339, 340 (Fla. 2d DCA 1980) (noting he was treated as a mentally-disordered sex offender).  Many of the psychological reports referred to Nyberg as suffering from sexual problems.  Dr. Merin stated Nyberg was "a sexual psychopath who will require years of treatment before he can be returned to society."  Upon discharge from the sexual offender program, the attending psychologist concluded while "psychological test data indicates a basic anti-social personality pattern it is our opinion that further deviant sexual acting out behavior is highly unlikely."  However, confusion about what this treatment actually meant is evident.  Patti Simms, the Correctional Services Assistant Administrator for

4

Florida's Bureau of Inmate Classification, issued a memorandum dated May 20, 1999, which stated "[a]s far as the sex offender issue is concerned, according to the PSI[R], a sex act occurred during the commission of the murder. I go by the official documents that are in your inmate file." The PSIR, however, does not state that a sex act occurred during the crime of conviction. The Simms memorandum is the only piece of evidence in the record claiming Nyberg committed a sex act during the crime of conviction.

Nyberg's PPRD was set for 2010, and the report establishing his PPRD references the horrific circumstances of his offense as the justification for the PPRD's date. However, no reference to a sex act or his alleged status as a sexual offender was made in the Parole Commission's decision. The Simms memorandum states a sex act occurred, but the cited support for her assertion does not contain such an allegation. Based on the justifications offered in support of Nyberg's PPRD, it is reasonable to conclude Nyberg's PPRD was based on the horrific circumstances of the underlying offense and not an alleged sexual offense. *See* 28 U.S.C. § 2254(d)(2) (noting federal courts may not grant habeas relief unless a state court decision was based on an unreasonable determination of the facts in light of the evidence presented). Accordingly, Nyberg's right to due

5

process was not violated as he failed to show the Parole Commission knowingly relied upon false information to set his PPRD. *Monroe*, 932 F.2d at 1442.

## II.

Nyberg next contends he was treated differently by the Parole Commission simply because he was incarcerated out-of-state. He asserts the Parole Commission erred by acting pursuant to Rule 23-21.006(3)(b)(8), a rule that was not applicable by its terms. Moreover, Nyberg notes he offered two solutions to his out-of-state status, a telephone or courtesy interview, that would have negated the Parole Commission's cited reason for not providing him an interview–financial cost. He contends the Parole Commission's failure to provide him with an interview violated equal protection. He concludes he was similarly situated to Florida prisoners, treated differently, and the basis for that differential treatment was not rational.

"To establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest, such as race." *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001) (quotations omitted). When differential treatment does not affect a

6

fundamental right or single out a suspect class, it is subject only to rational basis review. *Cook v. Wiley*, 208 F.3d 1314, 1323 (11th Cir. 2000).

Under rational basis review, the first step is identifying a legitimate government purpose. *Joel v. City of Orlando*, 232 F.3d 1353, 1358 (11th Cir. 2000). The purpose need only be a goal the governmental body could have been pursuing; the actual motivation is irrelevant. *Id.* The second step is whether a rational basis exists to believe the challenged action would further the hypothesized purpose. *Id.*

The state court did not unreasonably apply the federal equal protection clause. As prisoners are not a suspect class and the deprivation of an interview was not based upon a fundamental right, the denial of an interview need only be scrutinized under the rational basis test. *Cook*, 208 F.3d at 1323. The Parole Commission stated financial constraints demanded out-of-state prisoners not be interviewed by state parole reviewers. Moreover, the Parole Commission claimed it tried to set up a courtesy interview, but Nevada never provided one. The evidence provided by both parties on this issue indicates there was a significant amount of confusion between Florida and Nevada on whether an interview was requested. Financial restraints are a rational governmental interest, and restricting

the travel of Florida parole investigators would further that purpose. *Joel*, 232 F.3d at 1358.

The state courts' reliance on Rule 23-21.006(3)(b)(8), which was not applicable in Nyberg's case, was not contrary to, nor an unreasonable application of, clearly established federal law. While the state court misapplied state law, the Parole Commission's actual conduct in dealing with Nyberg survives rational basis review, and, thus, the district court did not err in denying habeas relief on this issue.

**AFFIRMED.**