Jose SANTIAGO–LEBRON, Petitioner,

v.

FLORIDA PAROLE COMMISSION,
Respondent.

Case No. 10–22291–CIV.

United States District Court,
S.D. Florida.

Feb. 23, 2011.

Jose Santiago–Lebron, Miami, FL, pro se.

Christopher Macchiaroli, U.S. Attorney's Office, Miami, FL, for Defendants.

### ORDER AFFIRMING AND ADOPTING MAGISTRATE'S REPORT AND RECOMMENDATION

PATRICIA A. SEITZ, District Judge.

THIS MATTER is before the Court upon the Report of Magistrate Judge [DE–14] issued by the Honorable Patrick A. White, United States Magistrate Judge, recommending that Jose Santiago–Lebron's petition for writ of habeas corpus be denied on the merits. In summary, Magistrate White determined that the Bureau of Prisons' decision to cancel a Residential Drug and Alcohol Program for Spanish-speaking inmates did not violate Petitioner's constitutional rights. Having carefully reviewed, *de novo,* Magistrate Judge White's comprehensive Report and the record, the Court fully agrees with Magistrate White's thorough and well-reasoned analysis of the issues. Based on the legal analysis set forth in the Report, and noting that no objections have been filed, it is hereby

ORDERED that:

(1) Magistrate White's Report [DE–14] is AFFIRMED and ADOPTED, and incorporated by reference into this Court's Order;

(2) Petitioner Jose Santiago–Lebron's Petition for Writ of Habeas Corpus [DE–1] is DISMISSED; and

(3) This case is CLOSED.

### REPORT OF MAGISTRATE JUDGE

P.A. WHITE, United States Magistrate Judge.

#### I. Introduction

Jose Santiago–Lebron, who is presently confined at the Federal Correctional Insti-

tution at Miami, Florida, has filed a pro se petition for writ of habeas corpus under Title 28, Section 2241,[1] attacking the cancellation of a Residential Drug and Alcohol Program ("RDAP") for Spanish-speaking inmates.

This cause has been referred to the undersigned *for consideration and report* pursuant to Title 28, Section 636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

The Court has for its consideration the petition (DE# 1), the Government's response to an order to show cause (DE# 12), and the Petitioner's reply (DE# 13).

Construing the *pro se* Petitioner's arguments liberally, he appears to raise the following claims in his Section 2241 petition (renumbered):

1. The Bureau of Prisons ("BOP") violated the Ex Post Facto Clause by cancelling the Spanish RDAP because: (a) BOP applied Program Statement ("PS") 5330.11 retroactively; and (b) the Petitioner had a "settled expectation" of participating in a Spanish RDAP and a potentially receiving a sentence reduction;

2. The BOP violated Equal Protection by cancelling the Spanish RDAP because: (a) the Petitioner is similarly situated to English-speaking inmates who took the English RDAP at same time Petitioner was deemed eligible for the Spanish RDAP under PS 5530.10, and who were allowed to participate in RDAP, graduate as scheduled, and receive sentence reductions; and (b) cancellation of the Spanish RDAP and its replacement with an English RDAP had no rational basis;

3. The BOP violated the Due Process Clause by cancelling the Spanish RDAP and making him ineligible for early release after he had started participating in the program;

4. The BOP violated the Administrative Procedure Act ("APA") by: (a) arbitrarily and capriciously concluding the Petitioner was ineligible for RDAP; and (b) cancelling the Spanish RDAP without adhering to the "announce and comment" requirement; and

5. The BOP violated its own rules and procedures by: (a) enacting PS 5330.11 contrary to Congress' intent; (b) applying PS 5330.11 in a discriminatory manner contrary to it's non-discrimination policy, PS 1040.04; and (c) applying PS 5330.11 to benefit an "influential" inmate contrary to its employee code of conduct, PS 3420.09.

(DE# 1).

He seeks declaratory judgment, early release credit as though had he successfully graduated from a RDAP program, and immediate release based on that credit.

## II. Procedural History

The pertinent procedural history of this case is as follows. In the United States District Court for the District of Puerto Rico, case 07–0121, Santiago–Lebron entered a guilty plea to conspiracy to possess with intent to distribute at least 100 but less than 400 grams of heroin within 1,000 feet of public housing, a public elementary school or park. A second count was dis-

---

1. The filing is entitled "Petition for Alternative Relief" by way of writ of habeas corpus pursuant to Title 28, Section 2241, writ of mandamus, Declaratory Judgment Act, and Administrative Procedure Act. He seeks an injunction, discovery, declaratory judgment, and an order for immediate release from the Federal Bureau of Prisons as well as Warden Kenny Atkinson in his official capacity.

missed. (DE# 1 at 16). The Court imposed sixty months imprisonment with the recommendations that he be afforded educational and vocational training and be designated to serve his sentence in Florida.

On August 26, 2008, the Petitioner had an eligibility interview for RDAP. (DE# 12–1 at 2). On October 1, 2008, RDAP staff determined that the Petitioner was eligible for a Spanish RDAP program and placed him on a waiting list on November 4, 2008. (DE# 12–1 at 2). In February, 2009, a notice was posted informing inmates that the Spanish RDAP program would be phased out. (DE# 12–1 at 2). On March 16, 2009, the regulation and policy governing RDAPs was amended. *See* 28 C.F.R. 550.53; PS 5330.11. Specifically, PS 5330.11 amended the eligibility standards for an inmate's participation in RDAP to require proficient communication in English. Staff at FCI–Miami thought they could proceed with a Spanish RDAP program scheduled to begin on June 3, 2009, and ending on March 19, 2010. (DE# 12–1 at 3). An undated posting by the RDAP coordinator indicates the Petitioner was accepted into the Spanish RDAP. (DE# 1 at 35). On June 3, 2009, the Petitioner began attending the Spanish RDAP. (DE# 12–1 at 3). On June 19, 2009, the South Eastern Regional Office instructed FCI–Miami staff to discontinue the June 3 Spanish RDAP to bring it into compliance with PS 5330.11. (DE# 12–1 at 3); (DE# 12–2 at 3). FCI–Miami canceled the Spanish RDAP that same day and interviewed the Petitioner to determine his English proficiency. (DE# 12–1 at 3–4). The Petitioner was found to be "unqualified" for RDAP under PS 5330.11 because he was unable to understand or communicate in English well enough to participate. (DE# 12–1 at 4).

On June 28, 2009, Santiago–Lebron filed an informal administrative grievance alleging the Spanish RDAP's cancellation deprived him of the benefit of early release. (DE# 1 at 20). He argued he was not being permitted to take part in the program like his English-speaking counterparts in violation of equal protection and BOP's Program Statement 3420.09, which prohibits discrimination, and that a BOP policy was being applied retroactively in violation of the Ex Post Facto clause. Warden Atkinson denied the request for administrative remedy on August 3, 2009, because the RDAP program is unavailable for inmates who have problems understanding English and encouraged the Petitioner to enroll in the Education department for testing. (DE# 1 at 23).

Santiago–Lebron filed an appeal on August 17, 2009, from Atkinson's response. (DE# 1 at 28); *see also* (DE# 1 at 24) (an apparently duplicative undated and unsigned appeal form). The Regional Director responded on October 7, 2005. (DE# 1 at 27). He denied the appeal because Santiago–Lebron was not being excluded from the RDAP based on nationality or race. Rather, he did not qualify for the program because he could not understand English. He encouraged the Petitioner to pursue an English as a Second Language ("ESL") program and apply for RDAP when he is able to satisfy the admission criteria.

Santiago–Lebron appealed from the Regional Director's response on December 15, 2009. (DE# 1 at 32). The National Inmate Appeals administrator denied the appeal on April 20, 2010, because the Warden and Regional Director had adequately addressed Santiago–Lebron's concerns. (DE# 1 at 31).

Santiago–Lebron filed the instant petition on June 27, 2010.

### III. Statutory, Regulatory, and Policy Background

The Violent Crime Control and Law Enforcement Act of 1994 (VCCLEA) requires

the BOP to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). To carry out this requirement, the BOP must provide residential substance abuse treatment for all eligible prisoners, "subject to the availability of appropriations...." 18 U.S.C. § 3621(e)(1). An "eligible prisoner" is one who is "determined by the Bureau of Prisons to have a substance abuse problem," and who is "willing to participate in a residential substance abuse treatment program." 18 U.S.C. § 3621(e)(5)(B)(i) and (ii). As an incentive for the successful completion of the residential treatment program, the BOP may, in its discretion, reduce an inmate's sentence by up to one year. 18 U.S.C. § 3621(e)(2); *Lopez v. Davis,* 531 U.S. 230, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001).

As a corollary, BOP's post-sentence administration statute, Title 18, Section 3624(f), contains a mandatory functional literacy requirement for all mentally capable inmates to reach eighth-grade literacy. As part of this provision, non-English speaking inmates are required to participate in an English–As–A–Second–Language program until they function at the equivalence of the eighth grade on a nationally recognized educational achievement test. 18 U.S.C. § 3624(f)(4).

BOP's regulations implementing these statutes provide that, in order to be admitted into RDAP, inmates must: (1) have a verifiable substance use disorder; (2) sign an agreement acknowledging program responsibility; and (3) when beginning the program, be able to complete all three components of the program. 28 C.F.R. 550.53(b)(1)-(3). The Drug Abuse Program Coordinator "decides whether to place inmates in RDAP based on the criteria set forth in paragraph (b)...." 28 C.F.R. § 550.53(e).

BOP's policies applying the regulations, in turn, are set forth in BOP's Program Statements ("PS"). *See* http://www.bop.gov/DataSource/execute/dsPolicyLoc. The BOP policy at issue in the instant case is PS 5330.11, which became effective on March 16, 2009. *See* PS 3550.10 (rescinded by PS 5330.11; previously addressed RDAP eligibility). The citing references for PS 5330.11 are the above-referenced VCCLEA section addressing drug treatment (18 U.S.C. § 3621(e)), and the Post-sentence Administration statute's mandatory functional literacy requirement (18 U.S.C. § 3624(f)). Under PS 3550.11, the BOP must screen inmates for drug treatment program eligibility. A Drug Abuse Treatment Specialist is required to determine if "[t]here has been consultation with the Education Department (see Section 2.4.5) and evidence is documented that the inmate cannot participate in the program; e.g., has a cognitive impairment or learning disability that precludes participation or is **unable to participate in the program in the language in which it is conducted.**" PS 5330.11 § 2.5.8(2) (emphasis added). A Drug Abuse Program Coordinator ("DAPC") "must also determine if the inmate can fully engage in treatment; i.e., communicate in English and/or comprehend treatment expectations...." PS 5330.11 § 2.5.9.; *see* 550.53(e). This section correlates with the BOP's **mandatory** English–A–Second Language Program ("ESL"), which limited English proficient inmates are required to attend "until they function at the equivalence of the eighth grade level in competency skills." 28 C.F.R. § 544.40; *see* 18 U.S.C. § 3624(f)(4).

### IV. Remedy and Parties

In his "Petition for Alternative Relief," the Petitioner seeks relief by way of writ of habeas corpus pursuant to Title 28, Section 2241, writ of mandamus, declarato-

ry judgment, and suit under the Administrative Procedure Act. The Petitioner names as respondents the Federal Bureau of Prisons and the warden of FCI–Miami, Kenny Atkinson, in his official capacity.

 "Where an inmate challenges the fact or duration of his confinement, a writ of habeas corpus is the appropriate remedy." *Preiser v. Rodriguez*, 411 U.S. 475, 490, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). Under federal habeas corpus law, the sole remedy that is available is the immediate or expedited release of a prisoner unconstitutionally convicted or sentenced. *Preiser*, 411 U.S. at 493, 93 S.Ct. 1827. Here, the Petitioner seeks review under the BOP's early release program for having completed RDAP, which relates to the fact or duration of confinement. Therefore 2241 appears to be the proper jurisdictional basis for review of his petition.[2] To the extent Santiago–Lebron seeks relief under the Administrative Procedure Act ("APA"), these claims will be addressed as allegations of APA violations under Section 2241. Early release is the only available remedy and the Petitioner's other claims for relief cannot be entertained.

The only proper respondent in a habeas corpus petition under Section 2241 is the inmate's immediate custodian at the time the petition is filed. 28 U.S.C. §§ 2242– 2243; *Rumsfeld v. Padilla*, 542 U.S. 426, 435, 124 S.Ct. 2711, 159 L.Ed.2d 513 (2004). For purposes of habeas petitions, the inmate's custodian is the warden of the facility where the inmate is confined. *Padilla*, 542 U.S. at 435, 124 S.Ct. 2711. In the instant case, the Petitioner was housed in Miami's Federal Prison Camp, part of FCI–Miami, at the time he filed his petition. *See* http://www.bop.gov/locations/institutions/mia/index.jsp (Bureau of Prisons website). Warden Atkinson of FCI–Miami is therefore the only proper Respondent. The Bureau of Prisons should be dismissed from the action should the Court reject the undersigned's recommendations and grant relief.

### V. Exhaustion

The Respondent does not contest Santiago–Lebron's exhaustion of administrative remedies.

### VI. Standard of Review

Relief under Section 2241 is only available to a prisoner who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). As set forth in the following discussion section, the Petitioner is not entitled to relief because he has failed to demonstrate that any Constitutional or statutory violation has occurred.

### VII. Discussion[3]

(1) *Ex Post Facto*

---

2. Some case law suggests the petitioner should have brought his claims in a civil rights complaint pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), rather than Section 2241. *See, e.g., Moran v. Wells*, 2009 WL 840196 (S.D.Ga. March 30, 2009) (inmate's challenge to his ineligibility to participate in a drug treatment program related to the conditions, rather than the fact or duration, of his confinement, and therefore was not cognizable under Section 2241 but should have been brought pursuant to *Bivens*). Even if the case was construed as a *Bivens* complaint, the petitioner would be unable to prevail because a federal inmate has

no liberty interest in participating in, or obtaining early release under, a rehabilitative program. *See Sandin v. Conner*, 515 U.S. 472, 480, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); *Moody v. Daggett*, 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976). Further, the relief the Petitioner seeks is in the nature of habeas rather than damages for a civil rights violation and would be unavailable under *Bivens*.

3. The Petitioner's claims have been renumbered and condensed to facilitate analysis and eliminate repetition. Any claim or sub-claim

The Petitioner contends the BOP's cancellation of its Spanish RDAP violated the Ex Post Facto Clause because: (a) the BOP applied PS 5330.11 retroactively; and (b) the Petitioner had a "settled expectation" of participating in Spanish RDAP and potentially receiving a sentence reduction.

To prevail on an ex post facto claim, a party must demonstrate (1) the law was retrospective in that it applied to events which occurred before its enactment, and (2) he was disadvantaged because it altered the definition of criminal conduct or increased the punishment for the crime. *Lynce v. Mathis*, 519 U.S. 433, 441, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997); *United States v. Abraham*, 386 F.3d 1033, 1037 (11th Cir.2004). The analysis of whether a particular statute acts retroactively "should be informed and guided by 'familiar considerations of fair notice, reasonable reliance, and settled expectations.'" *Martin v. Hadix*, 527 U.S. 343, 348, 119 S.Ct. 1998, 144 L.Ed.2d 347 (1999) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)).

(A) The BOP did not erroneously apply PS 5330.11 to the Petitioner retroactively in violation of the Ex Post Facto Clause.

First, the BOP did not apply PS 5330.11 retrospectively to events occurring before its enactment. The Petitioner had been "accepted" into the Spanish RDAP and placed on a waiting list prior to PS 5330.11's enactment. However, he had not begun the program, much less successfully completed it or been provided with a determination of eligibility for early release, prior to the date the amended policy became effective on March 16, 2009. *See* Claim (1)(b), infra.

Second, the policy did not alter the definition of criminal conduct or increase

the Petitioner's punishment. The Petitioner's sentence, which did not contemplate participation in RDAP or early release, has not increased due to PS 5330.11. (DE# 1 at 16). He is not barred outright from the possibility of completing RDAP; he is simply ineligible to participate in RDAP *until he achieves an acceptable level of English proficiency*. Nothing prevents him from participating in the program and, if he successfully completes it, from being considered for early release once he is proficient in English. His sentence is unchanged by PS 5330.11 and his punishment has not been increased.

(B) The Petitioner did not have a "settled expectation" of participating in Spanish RDAP and potentially receiving a sentence reduction.

The Petitioner was on a waiting list and had not yet begun RDAP when PS 5330.11 became effective. He had not completed the program and certainly had not been promised early release by the BOP at that time. Therefore, the Petitioner had no settled expectation of participating in the RDAP or receiving a sentence reduction when PS 5330.11 came into effect. *See, e.g., Giannini v. Fed. Bureau of Prisons*, 2010 WL 1427318 at *14 (D.Minn. Feb. 12, 2010) (no ex post facto violation where petitioner requested entry into RDAP prior to new policy, but was accepted after it became effective); *United States v. McLean*, 2005 WL 2371990 at *4 (D.Or. Sept. 27, 2005) (BOP's decision to eliminate a boot camp program did not violate ex post facto where the petitioner had not been accepted into the program); *Fason v. Sanders*, 2005 WL 2897041 at * 7 (E.D.Ark. Nov. 3, 2005) (no violation of ex post facto where petitioner was never accepted into the program). The fact that the BOP erroneously allowed him to begin

that is not expressly addressed does not support habeas relief.

the Spanish RDAP and subsequently corrected that error by cancelling the program does not alter this conclusion. *See* Claim (1)(a), supra; Claim (3), infra.

The Petitioner relies on case law from the Ninth Circuit, which has held that "[a] prisoner's expectation of early release may only arise when the BOP makes a lawful determination of the prisoner's eligibility and then informs the prisoner of such eligibility." *Bowen v. Hood,* 202 F.3d 1211 (9th Cir.2000); *Cort v. Crabtree,* 113 F.3d 1081 (9th Cir.1997). The Ninth Circuit's precedent is not binding because a district court is bound only by those decisions rendered within its circuit and by the Supreme Court. *McGinley v. Houston,* 361 F.3d 1328, 1331 (11th Cir.2004). Even if the Ninth Circuit case law applied, the Petitioner's success is not certain. He does not allege he was ever promised early release; only that he had been accepted into a Spanish RDAP when the BOP's policy changed, so he was deprived of the opportunity to complete the program and potentially have the opportunity to be considered for early release. The Petitioner had no settled expectation of participating in, completing, and obtaining early release based on the RDAP program under Eleventh Circuit law and therefore relief should be denied.

### (2) *Equal Protection*

The Petitioner contends BOP's cancellation of its Spanish RDAP program violated Equal Protection because: (a) similarly situated English-speaking inmates were allowed to participate in RDAP, graduate as scheduled, and receive sentence reductions; and (b) cancellation of the Spanish RDAP and its replacement with an English RDAP lacked a rational basis.

 The Equal Protection Clause requires the Government to treat similarly situated people alike. *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439,

105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). To establish such a claim, a prisoner can allege that: "(1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest, such as race." *Jones v. Ray,* 279 F.3d 944, 946–47 (11th Cir.2001). Immutable characteristics determined solely by the accident of birth such as race, national origin and gender are typically the basis for finding a suspect class. *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); *Williams v. Pryor,* 240 F.3d 944, 947 (11th Cir.2001); *Miccosukee Tribe of Indians of Florida v. United States,* 722 F.Supp.2d 1293 (S.D.Fla.2010). Language and national origin are not interchangeable. *Mumid v. Abraham Lincoln High School,* 618 F.3d 789 (8th Cir.2010). Language is not an immutable characteristic and, by itself, does not identify members of a suspect class. *See Soberal–Perez v. Heckler,* 717 F.2d 36, 41 (2d Cir.1983); *Olagues v. Russoniello,* 770 F.2d 791 (9th Cir.1985) (same); *see also Mumid,* 618 F.3d at 789 (policy that treats students with limited English proficiency differently than other students does not facially discriminate based on national origin in Civil Rights action). Nor are prisoners a suspect class. *See Cook v. Wiley,* 208 F.3d 1314, 1322–23 (11th Cir.2000); *Jackson v. State Bd. of Pardons,* 331 F.3d 790, 797 (11th Cir.2003); *Nyberg v. Crawford,* 290 Fed.Appx. 209, 211 (11th Cir.2008).

 If a suspect classification or fundamental right is implicated, a Court must apply strict scrutiny review. *Johnson v. California,* 543 U.S. 499, 506–07, 125 S.Ct. 1141, 160 L.Ed.2d 949 (2005). If the allegations do not implicate a suspect class, a court may evaluate only whether there was a rational basis for the treatment. *Village of Willowbrook v. Olech,*

528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000); *Cook,* 208 F.3d at 1323. Under rational basis review, the first step is identifying a legitimate government purpose. *Joel v. City of Orlando,* 232 F.3d 1353, 1358 (11th Cir.2000); *Nyberg,* 290 Fed.Appx. at 211. The actual motivations of the enacting governmental body are entirely irrelevant. *Miccosukee,* 722 F.Supp.2d at 1298. The second step is whether a rational basis exists to believe the challenged action would further the hypothesized purpose. *Joel,* 232 F.3d at 1358. The proper inquiry is concerned with the existence of a conceivably rational basis, not whether that basis was actually considered by the legislative body. As long as reasons for the legislative classification may be have been considered to be true, and the relationship between the classification and the goal is not so attenuated as to render the distinction arbitrary or irrational, the legislation survives rational-basis scrutiny. *Miccosukee,* 722 F.Supp.2d at 1298.

(A) The Petitioner is not "similarly situated" to English-speaking inmates who took the English RDAP at same time Petitioner was deemed eligible for the Spanish RDAP under PS 5530.10.

As a preliminary matter, the Petitioner's suggestion that the BOP is discriminating against him because he is a prisoner who lacks English proficiency fails because neither his status as a prisoner nor his lack of English proficiency is a protected class. *See Mumid,* 618 F.3d at 789; *Soberal–Perez,* 717 F.2d at 41; *Olagues,* 770 F.2d at 791; *Cook,* 208 F.3d at 1322–23; *Nyberg,* 290 Fed.Appx. at 211.

■ His allegation that the BOP treated a similarly situated individual, Blake Ladenheim, differently also fails. The Respondent has submitted an affidavit explaining the Petitioner was excluded from the RDAP was because an interview revealed he cannot communicate in English

well enough to fully engage in treatment as defined by PS 5330.11. The Petitioner does not dispute this finding. In addition, a review of records for inmate Ladenheim revealed that Ladenheim is proficient in English. Accordingly, Ladenheim was enrolled in an English RDAP and the Petitioner was found to be "ineligible" at this time. (DE# 12–1 at 4). The Petitioner has failed to refute the affidavit. Therefore, the Petitioner is not similarly situated to Ladenheim or other English-proficient inmates who participated in the English RDAP. *See, e.g., E.E.O.C. v. Kumi Mfg. Alabama, LLC,* 2011 WL 93786 (M.D.Ala. Jan. 11, 2011) (Hispanic applicant who was given an oral testing accommodation and did not speak English was not similarly situated to Black applicant who spoke English). The Petitioner has not identified any other specific inmate who lacks proficiency in English who was nevertheless permitted to participate in the RDAP from which the Petitioner was excluded.

(B) The BOP's cancellation of the Spanish RDAP and its replacement with an English RDAP had a rational basis.

■ A legitimate government purpose *for providing RDAP programs in English* is to conserve BOP's limited financial resources and provide effective drug treatment services to the greatest number of eligible inmates. A rational basis exists to believe that providing classes in English, and eliminating duplicative classes in other languages, would further a budgetary purpose. This goal also harmonizes with the mandatory functional literacy requirement which mandates ESL classes for non-English speaking inmates. 18 U.S.C. § 3624(f)(4).

The Petitioner's equal protection claim lacks record support and legal merit and should be denied.

**(3)** *Due Process*

Liberally construing the Petitioner's claims, he suggests his due process rights were violated when the BOP cancelled the Spanish RDAP after he began the program and as a result making him ineligible for early release.

 It is well established that inmates have absolutely no constitutional right to, or other protected liberty interest in, either participating in RDAP or receiving a sentence reduction for completing such a program. *Cook,* 208 F.3d at 1322–23. The loss of the mere opportunity to be considered for discretionary early release is therefore too speculative to constitute a deprivation of a constitutionally protected liberty interest. *Id.* As such, no process is due before the BOP terminates such a program. *See O'Kelley v. Snow,* 53 F.3d 319, 321 (11th Cir.1995) (where there is no protected liberty interest at stake, the procedures the BOP follows in making decisions are not required to comport with due process standards); *see, e.g., Snowden v. Keller,* 2010 WL 4810221 (M.D.Ala. Oct. 18, 2010); *Germany v. Keller,* 2010 WL 3002102 (M.D.Ala. July 8, 2010) (denying Section 2241 relief on petitioner's claims that the BOP violated his due process and equal protection rights by removing him from RDAP and denying him eligibility for early release); *see generally* PS 5331.01, § 7 (inmate may lose early release eligibility at any time as a result of identification of a previous error).

Further, the Petitioner's claim that he would have successfully completed the program and that BOP would have decided to award him a full year off his sentence is too speculative to support relief. *See Cook,* 208 F.3d at 1322–23; *Giannini,* 2010 WL 1427318 at *9 (noting early release was too speculative where it was premised on his successful completion of RDAP and the BOP's subsequent award of an unknown amount of sentence reduction). As

a result, the relief the Petitioner seeks—early release—is based on stacked inferences, would encroach on the BOP's exercise of discretion and cannot be granted.

**(4)** *APA*

The Petitioner appears to suggest the BOP violated the Administrative Procedure Act ("APA") by: (a) arbitrarily and capriciously concluding the Petitioner was ineligible for RDAP; and (b) cancelling the Spanish RDAP without adhering to APA's "announce and comment" requirement.

(A) The Petitioner's argument that the BOP arbitrarily and capriciously concluded he was ineligible for RDAP is not subject to judicial review.

Under the APA, a reviewing court must set aside agency decisions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). However, Title 18, Section 3625, provides that the APA sections governing judicial review (5 U.S.C. §§ 701–706), do not apply to "the making of any determination, decision, or order under this subchapter." 18 U.S.C. § 3625. "This subchapter," i.e., Subchapter C of the Postsentence Administration statute, includes Section 3621 which confers upon the BOP authority to administer and design drug treatment programs such as RDAP. 18 U.S.C. §§ 3621, 3625; *see Cook,* 208 F.3d at 1319.

Where judicial review under the APA is specifically excluded by statute, the United States Supreme Court has found that two questions are still appropriate for the Court's review: (1) whether any cognizable constitutional claim has been presented; and (2) whether the agency's interpretation of the statute is contrary to well-settled law. *Webster v. Doe,* 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988); *Neal v. United States,* 516 U.S. 284, 116 S.Ct. 763, 133 L.Ed.2d 709 (1996).

■ As set forth in Claims (1)(3), supra, the Petitioner has failed to present any cognizable constitutional claim. Nor is the BOP's interpretation of the statute contrary to well-settled law. *See* Claim (5)(A), *infra.* Accordingly, any substantive decision by the BOP with respect to the petitioner's participation in RDAP is not reviewable by this Court.

(B) The BOP was not required to comply with APA's "notice and comment" requirement before cancelling the Spanish RDAP.

APA rulemaking formal requirements only apply to substantive regulations, to interpretive rules, general policy statements or rules of agency organization, practice or procedure. 5 U.S.C. § 553(b)(3)(A).

■ Program Statements are generally exempt from the APA's notice and comment requirements because they do not have substantive effect, but are instead used to clarify or explain other laws and regulations. *See Reno v. Koray,* 515 U.S. 50, 61, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995) (describing BOP Program Statement as an "internal agency guideline . . . akin to an "interpretive rule" that "do[es] not require notice and comment" "); *Cook,* 208 F.3d at 1314.

■ The policy set forth in PS 5330.11 is not a "substantive rule." Congress gave the BOP discretion to implement the RDAP and provide treatment for eligible inmates. *See* Claim (5)(A), *infra.* The policy at issue simply clarifies eligibility requirements to participate in RDAP programs; it implements rather than alters the statutory language and does not exceed BOP's authority. Accordingly, the BOP was not required to comply with APA's notice and comment requirement before enacting PS 5330.11. *See, e.g., Giannini,* 2010 WL 1427318 (PS 5331.02, which instituted a tiered reduction system for RDAP completion, had no substantive

effect and was exempt from APA's notice and comment requirement). Therefore, to the extent the Petitioner challenges the enactment of PS 5330.11 as violating the APA, this claim should be denied.

(5) *BOP Rules*

The Petitioner contends BOP violated its own rules and procedures by: (a) enacting PS 5330.11 contrary to Congress' intent; (b) applying PS 5330.11 in a discriminatory manner contrary to it's non-discrimination policy, PS 1040.04; and (c) applying PS 5330.11 to benefit an "influential" inmate contrary to its employee code of conduct, PS 3420.09.

(A) The BOP's policy requiring English proficiency to participate in RDAP, PS 5330.11, is not contrary to Congress' intent.

■ Review of an agency's interpretation of a statute it administers begins with determining whether "Congress has directly spoken to the precise question at issue." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *De Sandoval v. U.S. Attny. Gen.,* 440 F.3d 1276 (11th Cir.2006). If Congress clearly expressed its purpose and the agency's regulation conflicts with this purpose, then the regulation must be set aside. *Chevron,* 467 U.S. at 843 n. 9, 104 S.Ct. 2778. However, if Congress has not directly addressed the issue, or the statute's language is ambiguous, the Court must then determine "whether the agency's [regulation] is based on a permissible construction of the statute." *Chevron,* 467 U.S. at 843, 104 S.Ct. 2778. To uphold an agency's statutory interpretation, the Court "need not conclude that the agency construction was the only one it permissibly could have adopted . . ., or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Chevron,*

467 U.S. at 843 n. 11, 104 S.Ct. 2778. Agency regulations are entitled to "considerable" deference under *Chevron.* The same standard does not apply to the BOP's Program Statements because they are not agency regulations promulgated under the APA. Instead, they are entitled to "some deference" as long as they are permissible constructions of the statute. *Cook,* 208 F.3d at 1319–20.

■ Congress has instructed the BOP to provide substance abuse treatment to "eligible inmates" and has set some criteria for determining which inmates are eligible. However, it has given the BOP a great deal of discretion in determining which inmates are eligible and how to provide treatment with available resources. This implied authority is apparent in several provisions of the statute. For instance, Section 3621(e)(3) requires the Bureau of Prisons to transmit a report to Congress each year detailing "a full explanation of *how eligibility for such programs is determined,* with complete information on what proportion of prisoners with substance abuse problems are eligible . . . ." This reporting provision implies that a great deal of discretion to determine inmate eligibility for treatment lies with the BOP. In Section 3621(b), which addresses place of imprisonment, the statute provides that "[t]he Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." Congress has not defined appropriateness and this determination is implicitly granted to BOP. In addition, the statute acknowledges that BOP is required to provide residential substance abuse treatment for all eligible prisoners, "*subject to the availability of appropriations* . . . ." 18 U.S.C. § 3621(e)(1). Here, Congress has acknowledged budgetary realities that BOP faces and has built in discretion for the BOP to determine how to allocate its re-sources in making drug treatment eligibility decisions. Taken together, these provisions illustrate that Congress intended to grant the BOP discretion to set specific eligibility requirements for inmates to participate in RDAPs.

The BOP policy at issue, PS 5330.11, is a permissible construction of the foregoing statutes. Specifically, PS 5330.11's requirement that RDAP participants be able to communicate in English is based on a permissible construction of the statute that only "eligible" inmates may participate. The English requirement is also consistent with Congress' grant of discretion to BOP to provide substance abuse treatment based on the availability of appropriations and, by extension, to eliminate the cost of redundant programs. Further, the English proficiency condition for participating in RDAP is consistent with the Postsentence Administration statute's mandatory functional literacy requirement. 18 U.S.C. 3624(f)(4) ("[n]on-English speaking inmates shall be required to participate in an English–As–A–Second–Language program until they function at the equivalence of the eighth grade on a nationally recognized educational achievement test."). Based on the foregoing, PS 5330.11 is a permissible construction of the relevant statutes and does not exceed BOP's authority. *See, e.g., Cook,* 208 F.3d at 1321–22 (BOP reasonably interpreted statute addressing the availability of sentence reduction for prisoners who had been convicted of "crimes of violence.").

(B) The BOP's application of PS 5330.11 does not violate the policy of non-discrimination against inmates, PS 1040.04.

BOP's regulations contain the following policy of non-discrimination towards inmates:

> Bureau staff shall not discriminate against inmates on the basis of race, religion, national origin, sex, disability,

or political belief. This includes the making of administrative decisions and providing access to work, housing and programs.

28 C.F.R. § 551.90.

The program objective for PS 1040.04 is for assignments in housing, work and programs to be available to inmates on an equal opportunity basis. Towards this end, the BOP's policy is that "[e]ach Warden shall review and, as necessary, establish local procedures to ensure that inmates are provided essential equality of opportunity in being considered for various program options, work assignments, and decisions concerning classification status." PS 1040.04.

As previously set forth in Claim (2), supra, PS 3550.11 does not discriminate on the basis of race, national origin or any other protected classification. For the same reason that PS 3550.11 does not violate equal protection, it does not violate PS 1040.04's non-discrimination policy.

(C) Nor does the BOP's application of 5330.11 violate BOP's standards of employee conduct, PS 3420.09.

A BOP employee "may not show favoritism or give preferential treatment to one inmate, or a group of inmates, over another." PS 3420.09(9)(c)(1). The Petitioner's allegation that the BOP cancelled the Spanish RDAP to favor an inmate from an influential family, Blake Ladenheim, is conclusory and unsupported by any evidence. The RDAP eligibility policy contained in PS 5330.11 applies to the entire BOP, not just to FCI–Miami, and became effective on the same date throughout the BOP system. The Respondent has provided evidence that the Spanish RDAP was cancelled at FCI–Miami based on a directive from the regional office to bring FCI–Miami into compliance with the new policy. (DE# 12–1 at 3); (DE# 12–2 at 3). The Petitioner's outlandish and wholly unsupported claim that FCI–Miami cancelled the Spanish RDAP and replaced it with an English RDAP to favor an "influential" inmate should be rejected. No violation of PS 3420.09 has been demonstrated.

*VIII. Conclusion*

The Petitioner has failed to demonstrate his custody violates the Constitution, laws or treaties of the United States. *See* 28 U.S.C. § 2241(c)(3). It is therefore recommended that this petition for writ of habeas corpus be denied and the case be closed.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.